UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Campaign Registry, Inc.,<br><br>    Petitioner,<br><br> -v-<br><br>Giovanni Tarone and Alan Quayle,<br><br>    Respondent. | Civil Action No. 24 cv 2314 |

**PETITION TO ENFORCE ARBITRATION SUBPOENA**

1. Petitioner the Campaign Registry, Inc. ("Petitioner") hereby brings this Petition to Enforce Arbitration Subpoena against Giovanni Tarone ("Tarone") and Alan Quayle ("Quayle").

**PARTIES**

2. Petitioner the Campaign Registry, Inc. is a Virginia Corporation with its principal place of business in Fairfax County, Virginia.

3. Giovanni Tarone is an individual residing in Nassau County, New York and is a citizen of the State of New York.

4. Alan Quayle is an individual residing in Union County, New Jersey and is a citizen of the State of New Jersey.

**JURISDICTION**

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a proceeding to enforce arbitration subpoenas arising under the Federal Arbitration Act, 9 U.S.C. § 7.

6. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7. Venue is proper in this Court pursuant to 9 U.S.C. § 7 because the arbitrators presiding over the Arbitration (as defined below) sit within this District.

## THE UNDERLYING CLAIMS

8. Petitioner employed William Peters as its Chief Financial Officer, and Peters owed Petitioner a fiduciary duty. His employment was subject to an Executive Employment Agreement ("Employment Agreement") and Employee Proprietary Information, Inventions, Non-Solicitation and Non-Competition Agreement ("PIIA Agreement"), attached hereto as **Exhibit 1**.

9. The Employment Agreement and PIIA Agreement delineate Peters' duties owed to Petitioner. *See, e.g.,* Employment Agreement, Ex. 1, ¶ 3 (requiring that Peters devote his "full time and attention to the business and affairs of the Company and its affiliates, if any" and "must declare" any organizations to which Peters "provides Advisory Services."); PIIA Agreement, Ex. 1, ¶ 1.1 (prohibiting unauthorized disclosure of company information and, further, prohibiting Peters from publishing any materials relating to his work without authorization), ¶ 4 (imposing a duty of loyalty and prohibiting Peters from engaging in any business activity competitive with or in conflict with Petitioner's business), ¶ 8 (requiring Peters return company property upon termination).

10. The Employment Agreement provides that Peters' employment could be terminated upon due cause: "The Company may terminate the Executive's employment for Due Cause . . . "Due Cause," for purposes of this Agreement, means (i) material violation by the Executive of the Executive's obligations hereunder or under the PIIA Agreement . . ., [or] (ii) any act or acts of dishonesty on the Executive's part which are intended to or do result in the Executive's personal enrichment . . . ." Employment Agreement, Ex. 1, ¶ 5(c).

11. TCR Acquisition LLC ("TCR Acquisition") is a company organized under the laws

of the State of Virginia. TCR Acquisition is not affiliated with Petitioner in any manner. Frederick Joyce is the CEO and Chief of Counsel for TCR Acquisition. Tarone is the so called "Chief of Staff" for TCR Acquisition. Peters has longstanding relationships with Joyce, Quayle, and in particular, Tarone.

12. TCR Acquisition and its principals, including Joyce and Tarone, as well as Alan Quayle, are vocal detractors of Petitioner. For years, they along with Peters, have engaged in an improper, public campaign to damage Petitioner's business and reputation, including in an effort to effect a hostile acquisition of Respondent or otherwise damage or devalue Respondent's business.

13. During Peters' employment, he knew that TCR Acquisition and its principals were vocal detractors of Respondent. He was instructed to cease communications with TCR Acquisition and its principals, including on subjects pertaining to Petitioner. And he was asked about the scope of his communications with TCR Acquisition and its principals, but denied and withheld the extent of his communications with TCR Acquisition and its principals.

14. Instead, during Peters' employment with Petitioner, he admitted to a limited scope of communications with TCR Acquisition and its principals, only to the extent he believed those communications would exonerate him. For example, from his personal email address, and without copying any of Petitioner's personnel, Peters admitted to emailing Tarone a PowerPoint deck containing Petitioner's confidential information on May 25, 2022, as well as two emails negatively commenting on or otherwise relating to Petitioner on July 11, 2022. And then Claimant admitted to continuing to communicate with Tarone, but only as "friends."

15. Thereafter, and as a result, Petitioner terminated Peters' employment pursuant to the due cause provision in his Employment Agreement.

16. Claimant contested his termination from employment, asserting he was not terminated for due cause, that he was not secretive and instead had always been candid, forthright, and had nothing to hide.

17. On February 16, 2023, Peters filed a Demand for Arbitration against Petitioner, AAA Case No. 01-23-0000-6920 (the "Arbitration"), attached hereto as **Exhibit 2**. Peters asserts, among other things, that his employment was terminated without due cause pursuant to the Employment Agreement and seeks damages as a result. Peters seeks $975,000. *Id.*

18. Subsequently, Petitioner filed a counterclaim, attached hereto as **Exhibit 3** (excluding its exhibits). Petitioner alleges that Peters breached the Employment Agreement, including but not limited to on the basis that he failed to hold in strict confidence and not disclose Petitioner's information without authorization, failed to devote his best efforts and attention to Petitioner, failed to act in Petitioner's interests, and failed to return company property. Petitioner also asserts claims for breach of fiduciary duty, trade secret misappropriation, and defamation.

19. In the course of discovery in the Arbitration, Peters declined to disclose the extent of his communications with TCR Acquisition and its principals, including on matters relating to Petitioner. Petitioner then confronted Peters with forensic data, from the browser history of his work laptop, undeniably showing that he accessed and had in fact engaged in further communications with TCR Acquisition and its principals.

20. Peters sent those communications from personal email accounts, during his employment with Petitioner, despite being instructed to cease communications with TCR Acquisition and its principals, despite his obligations to Petitioner, and despite denying any further communications with TCR Acquisition.

21. These communications, which include Tarone and Joyce, revealed at the very least

that Peters utilized his inside knowledge of Petitioner and/or its confidential information to assist TCR Acquisition with (1) drafting press release(s), which were subsequently issued on behalf of TCR Acquisition with no apparent attachment to Peters, that accused Petitioner of wrongdoing and argued Petitioner should be acquired by TCR Acquisition; (2) drafting correspondence on behalf of TCR Acquisition with no apparent attachment to Peters, that likewise accused Petitioner of wrongdoing and argued Petitioner should be acquired by TCR Acquisition; and (3) otherwise related to Peters'/TCR Acquisition's efforts to damage or acquire Petitioner.

## THE SUBPOENAS

22. On July 12, 2023, the Panel in the Arbitration issued a Scheduling Order, providing that "The arbitration act will apply in the Arbitration," and that: "Subpoenas to secure the appearance of non-party witnesses or documents will be issued by the Arbitrators. The Party requesting the subpoena shall disclose the subpoena to and shall confer with all other Parties prior to requesting its issuance and shall indicate if any Party opposes the issuance. If any Party objects to issuance of the subpoena or the content of any subpoena, such objection shall be presented to the Arbitrators no more than 5 business days after issuance is requested, unless a shorter time is ordered by the Arbitrators. Subpoenas related to discovery shall be submitted to the Arbitrators on or before November 15, 2023. Subpoenas for the attendance of witnesses at the hearing shall be submitted no later than December 15, 2023."

23. On December 14, 2023, Petitioner prepared and submitted subpoenas to TCR Acquisition, Tarone, and Joyce, and requested that they be issued.  Over the next months, Peters repeatedly and repetitively objected to the subpoenas on procedural grounds, necessitating dilatory and extensive briefings.  Peters did not specifically object on substantive grounds, including to assert any substantive objections within 5 business days of the request for the subpoenas as

required by the Scheduling Order.

24. On December 21, 2023, Peters objected to the subpoenas. On January 16, 2024, the Panel issued an order, attached hereto as **Exhibit 4**, ordering that it "has the authority to issue subpoenas to third parties that require them to appear for a hearing and bring documents with them . . . Respondents [Petitioner] will need to identify a location for each subpoena that complies with Rule 45(c). After Respondents have identified these locations, the Panel can discuss the necessary hearings."

25. On January 23, 2024, Petitioner provided proposed locations for the hearings to the Panel. On January 25, 2024, Peters again objected to the subpoenas. On February 2, 2024, the Panel issued a further order, attached hereto as **Exhibit 5**, ordering that the "Panel will issue the requested third-party subpoenas" and that "Respondents should coordinate with Claimant and the third parties to come up with dates for the respective hearings at the locations provided that work for all parties."

26. On February 7, 2024, Petitioner emailed the third parties, requesting their availability and preferred location for the hearings. Petitioner sent the emails to known email addresses for the third parties. Petitioner did not receive any responses. Petitioner also requested that Peters' counsel for cooperation with respect to communicating with the third parties, given Peters' relationships with the third parties. In response to these requests, Peters' counsel denied any attorney-client relationship with some or all of the third parties and otherwise refused to assist with coordinating the hearing with the third parties.

27. On February 16, 2024, having not received voluntary cooperation from Peters' counsel or the third parties, Petitioner asked the Panel to move forward with setting hearing dates. On February 19, 2024, Peters again objected to issuance of the subpoenas. And, on February 21,

2024, Peters submitted a further objection to issuance of the subpoenas.

28. On February 21, 2024, the Panel issued an email Order, attached hereto as **Exhibit 6**, reaffirming that "the panel is going to issue them as previously stated." On February 22, 2024, Peters submitted yet another objection to issuance of the subpoenas.

29. On February 22, 2024, the Panel issued the subpoenas to Tarone (attached hereto as **Exhibit 7**), Quayle (attached hereto as **Exhibit 8**), and TCR Acquisition (attached hereto as **Exhibit 9**). The document and testimony subpoenas set hearing dates in Washington, D.C. on March 6, 2024 for TCR Acquisition, and New York, New York for Tarone and Quayle on March 19, 2024.

30. On February 23, 2024, Petitioner caused Joyce to be personally served with the TCR Acquisition subpoena. The proof of service is attached as **Exhibit 10**. On February 24, 2024, Petitioner caused Tarone to be personally served with the subpoena. The proof of service is attached as **Exhibit 11**. On February 25, 2024, Petitioner caused Quayle to be personally served with the subpoena. The proof of service is attached as **Exhibit 12**.

31. On February 26, 2024, the Panel issued an email Order, stating that it "determined the document requests to the third parties are necessary . . .," attached hereto as **Exhibit 13**.

32. On February 29, 2024, as it turns out, and only after exhausting any conceivable objections to the subpoenas, Peters' counsel disclosed that they also represent the third parties TCR Acquisition, Tarone, and Quayle. Peters' counsel conveyed that the third parties would not appear at the hearings. And Peters' counsel then sent correspondence to the Panel confirming the third parties would not appear, stating they are not "under any legal obligation to appear for a hearing or produce documents," a copy of which is attached hereto as **Exhibit 14**.

33. On February 29, 2024, Petitioner submitted a request for order to show cause to the

Panel as to (1) why Peters' counsel should not be compelled to ensure the third parties attend hearings and (2) why nonmonetary or nonmonetary sanctions, including adverse inferences and issue sanctions, should not be issued against Peters in the event the third parties fail to attend.

34. On March 4, 2024, the Panel issued an order finding it lacks authority to enforce the subpoenas and denying without prejudice Petitioner's request for sanctions.

## ENFORCEMENT OF THE SUBPOENAS

35. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 7: "The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." 9 U.S.C. § 7.

36. The subpoenas seek critical information pertaining to the claims in the Arbitration, including but not limited to Peters' breach of his employment agreement, breach of fiduciary duty, defamation of Petitioner, and his maliciousness.

37. In an effort to suppress evidence of wrongdoing, Peters and the third parties have sought to withhold or deny the existence of this critical information, despite the Panel's efforts to provide an efficient process for the third parties to attend the arbitration hearing, and have otherwise resisted efforts to obtain discoverable information by whatever means possible.

**WHEREFORE**, Petitioner respectfully requests that this Court enter an Order:

1. Compelling compliance with the arbitration subpoena pursuant to 9 U.S.C. § 7; and

2. Granting such other and further relief as may be appropriate.

Dated: March 27, 2024

LITTLER MENDELSON, P.C.

By: *Miguel A. Lopez*

Miguel A. Lopez
900 Third Avenue, 8th Fl.
New York, NY 10022
Telephone: 212.583.9600
Facsimile: 212.832-2719
malopez@littler.com

Mark A. Romeo (motion for admission pro hac vice forthcoming)
mromeo@littler.com
James A. Becerra (motion for admission pro hac vice forthcoming)
jbecerra@littler.com
18565 Jamboree Road
Suite 800
Irvine, CA  92612
Telephone:  949.705.3000
Facsimile:  949.724.1201

*Attorneys for Petitioner*