UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————x

Campaign Registry, Inc.,

    Petitioner,

  -against-                                                24 Civ. 2314

Tarone, et al.,

    Respondents.

——————————————————————x

**DECISION AND ORDER DENYING PETITIONER'S MOTION TO COMPEL**

McMahon, J.:

Petitioner Campaign Registry, Inc. ("Campaign") has moved for entry of an order compelling compliance with arbitral subpoenas issued to Respondents Giovanni Tarone ("Tarone") and Alan Quayle ("Quayle"). Dkt. No. 15. Tarone and Quayle have moved to dismiss Campaign's petition to enforce the arbitral subpoenas, or in the alternative, to have the Court quash the arbitral subpoenas for ineffective service of process. Dkt. No. 13.

The Court has considered the parties' submissions.[1] For the following reasons, the Court denies Petitioner's Motion to compel compliance with the subpoenas and dismisses the Respondents' motions as moot in light of that ruling.

---

[1] At a recent conference in this case, the Court discussed these pending motions with counsel for the parties and ended the discussion with the following request: "If you should, in the next few days, come across any other cases that might be enlightening, feel free to send a letter." Dkt No. 42, Tr. 20:21–23 Campaign submitted a letter on June 10 which cited "further authorities in support. . ." of its position. Dkt. No. 37. Tarone and Quayle moved to strike this letter, Dkt. No. 38, on the ostensible ground that it constituted an "unauthorized sur-reply improperly characterized as a notice of supplemental authority." Dkt. No. 39. As I had invited the submissions of additional authority (which Campaign did), I find this motion utterly outrageous. The motion is denied simply on the basis that it seeks to strike a document whose submission the Court invited. I have reviewed the submissions at Dkt. Nos. 38–41, although I did not need to do so, since the motion was on its face ridiculous.

1

## FACTS

On October 1, 2018, William Peters ("Peters") entered into an employment agreement (the "Employment Agreement") with Buc Mobile, Inc. ("Buc"), a company that was later acquired by Campaign. Romeo Decl. Ex. 1; *see* Dkt. No. 14, at 2. Peters' Employment Agreement contains the following provisions: "[t]his Agreement shall be governed by the laws of the State of Delaware without reference to the choice or conflict of law principles thereof," Romeo Decl. Ex. 1, at 6; and "[a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by binding arbitration in the State of Delaware in accordance with the rules of the American Arbitration Association then in effect . . . ." *Id.* at 7.

On February 16, 2023, Peters filed a Demand for Arbitration against Campaign and Buc after he was fired, allegedly without cause. Romeo Decl. Ex. 2, at 1. The Demand for Arbitration specifies Delaware as the Hearing Locale. *Id.* at 2.

On February 22, 2024, Campaign obtained from the arbitration panel subpoenas commanding Tarone and Quayle – non-parties to the arbitration – to produce certain documents/materials in their custody and appear at a hearing before the arbitration panel in New York, New York. Romeo Decl. Exs. 7–9. Tarone and Quayle have not complied with the subpoenas.

On March 27, 2024, Campaign petitioned this court to enforce the arbitral subpoenas, Dkt. No. 1, and on April 19, 2024, Campaign moved to compel Tarone and Quayle to comply with the arbitral subpoenas, Dkt. No. 15. Tarone and Quayle oppose Campaign's motion and have moved to dismiss Campaign's petition to enforce the underlying arbitral subpoenas, or in

the alternative, to quash the arbitral subpoenas for ineffective service of process. Dkt. No. 13. Tarone and Quayle have also requested attorneys' fees.

There is no need to address the ineffective service argument; the cross motions can be and are being decided on other grounds.

## THE MOTION TO COMPEL COMPLIANCE IS DENIED

"An arbitrator's subpoena authority over entities that are not contractually bound by the arbitration agreement, such as nonparties, is strictly limited to that granted by the Federal Arbitration Act . . . ." *Rembrandt Vision Tech.'s, L.P. v. Bausch & Lomb, Inc.*, No. 1:11-cv-2829, 2011 WL 13319343, at *2 (N.D. Ga. Oct. 7, 2011) (citing *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3rd Cir. 2004); *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008)). Section 7 of the Federal Arbitration Act ("FAA") provides that arbitrators may issue summonses and that:

> if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition *the United States district court for the district in which such arbitrators, or a majority of them, are sitting* may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added). In other words, "a federal court's authority to enforce an arbitrator's subpoena is coextensive with the court's authority to enforce one of its own subpoenas." *All. Healthcare Serv.'s, Inc. v. Argonaut Priv. Equity, LLC*, 804 F.Supp.2d 808, 811 (N.D. Ill. 2011); *see Broumand v. Joseph*, 522 F.Supp.3d 8, 17 (S.D.N.Y. 2021). "Service and enforcement of subpoenas in federal court is governed by Federal Rule of Civil Procedure 45," *All. Healthcare Serv.'s*, 804 F.Supp.2d at 811 (citing *Dynegy Midstream Servs., LP v.*

3

*Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006), which states in part that "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

The Eleventh Circuit has concluded that "the plain meaning of 9 U.S.C. § 7 requires that a motion to compel must be filed in the district in which the arbitrators are sitting." *Managed Care Advisory Grp. v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019). While "[t]he FAA does not further define the term 'the district in which such arbitrators, or a majority of them, are sitting,'" *Rembrandt*, 2011 WL 13319343, at *2 (quoting 9 U.S.C. § 7), courts across the country have concluded "that the arbitrator 'is sitting' where the underlying arbitration is being administered – not the place of production." *Depuy Synthes Sales, Inc. v. Smith + Nephew, Inc.*, No. 1:21-mc-11, 2022 WL 79812, at *2 (S.D. Oh. Jan. 7, 2022) (collecting cases); *see Dynegy*, 451 F.3d at 95; *Day v. Orrick, Herrington & Sutcliffe LLP*, No. 21-mc-80181, 2021 WL 4069753, at *1 (N.D. Cal. Sept. 7, 2021) (*rev'd and remanded on other grounds*, 42 F.4th 1131 (9th Cir. 2022); *All. Healthcare Serv.'s*, 804 F.Supp. at 811–12.

Tarone and Quayle assert that the arbitration panel "is sitting" in Delaware, since that is where the arbitration is to be administered. Dkt. 1, Ex. 2. They argue that this means that under Section 7, only the United States District Court for the District of Delaware can enforce the arbitral subpoenas against them.

Campaign contends that the arbitration panel "is sitting" in New York and relies on *Washington National Insurance Co. v. OBEX Group ("WNIC")*, 958 F.3d 126, 139 (2d Cir. 2020), where the Second Circuit affirmed a district court judgment granting a petition to enforce two arbitration summonses, for support. Campaign claims that the circumstances in *WNIC* and this action are identical: for the purposes of the instant subpoenas, the arbitrators are sitting in New

4

York; compliance will be required in New York (rather than a distant state); and the petitioner filed the petition for enforcement in New York. Campaign further asserts that the operative arbitration clause in the Employment Agreement "is far more deferential to the arbitrators" than the arbitration agreement in *WNIC*; and that, "Even though the employment agreement provides that the ultimate arbitration is to occur in Delaware, the arbitrators maintain absolute discretion to sit in any jurisdiction for purposes of any preliminary hearings – including the instant subpoenas." Dkt. No. 22, at 6. Thus, according to Campaign, the arbitration panel, in its discretion, has elected to "sit" in New York.

The Court agrees with Tarone and Quayle. Not only do the facts presented in this case indicate that the place where the arbitration panel "is sitting" is Delaware, *see Rembrandt*, 2011 WL 13319343, at *3, but it also seems as if Campaign has disregarded significant distinctions between this case and the cases it has cited in support of its position.

First, unlike the arbitration agreement in *WNIC*, 958 F.3d at 139 – which stipulated that any arbitration would take place in New York, New York, the same location in which the defendants were ordered to appear – the arbitration provision in the Employment Agreement between Peters and Buc specifies that "[a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by binding arbitration in the State of Delaware in accordance with the rules of the American Arbitration Association then in effect . . . ." Romeo Decl. Ex. 1, at 7; *see also Day*, 2021 WL 4069753, at *1. Pursuant to those terms, Peters' Demand for Arbitration lists the arbitration's Hearing Locale is Delaware. Romeo Decl. Ex. 2. Therefore, the district in which the arbitrators "are sitting" under Section 7 is the District of Delaware.

Second, Campaign's attempts to distinguish the instant action from *Dynegy* fail. 451 F.3d 89. Campaign has argued that *Dynegy* is inapposite for the following reasons: (1) though the

Second Circuit in *Dynegy*, 451 F.3d at 95, found that the court lacked personal jurisdiction over the non-party that had been subpoenaed by the arbitrators in part because the FAA did not authorize nationwide service of process or enforcement, subsequent amendments to Rule 45 mean that the FAA permits nationwide service of process, *see Managed Care*, 939 F.3d at 1157; and (2) while the *Dynegy* decision does not include the pertinent language from the arbitration agreement, the Second Circuit had concluded that the arbitration agreement required arbitration to take place in New York City – which meant that pursuant to Section 7 and Rule 45, enforcement of the third-party subpoenas was only possible within 100 miles of New York City. 451 F.3d at 91, 94.

It is true that the FAA has been amended to allow for nationwide service of arbitral subpoenas. However, the fact that a subpoena can be served anywhere in the United States does not mean that the arbitrators are "sitting" anywhere but at the situs of the arbitration, which in this case is Delaware. The 2013 amendment to the Federal Rules of Civil Procedure did not amend or eliminate the language of § 7 of the FAA which provides that only a court in the district where the arbitrators are sitting can enforce a subpoena – no matter where that subpoena was served. Changing where a subpoena can be served does not affect where an arbitrator is 'sitting' for purposes of enforcing compliance under the very clear language of 9 U.S.C. § 7. *Day*, 2021 WL 4069753, at *2; *Depuy*, 2022 WL 79812, at *3. Several courts have determined it does not, *Depuy*, 2022 WL 79812, at *3; *Day*, 2021 WL 4069753, at *2, and this Court agrees with that conclusion.

Campaign further argues that *Managed Care*, 939 F.3d at 1158, stands for the proposition that "because a motion to compel under the FAA is not bound by 'Rule 45 regarding where motions to compel must be filed,' compliance can be required anywhere." Dkt. No. 25, at 2. But the plain text of Section 7 specifies that "upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person

or persons before said arbitrator or arbitrators . . . ." If Congress wanted to allow any court in the nation to enforce an arbitral subpoena, it needed to get rid of that statutory language. Perhaps it should have. But it did not do so. I, a mere United States District Judge, cannot do what Congress either declined or failed to do.

As to Campaign's remaining arguments about *Dynegy*, the Employment Agreement in this action's underlying arbitration provides that arbitration is to take place in Delaware. Romeo Decl. Ex. 1, at 7. And as the *Day*, 2021 WL 4069753, at *2, court observed, "[c]ourts have held that motions to enforce summonses must be brought in the district court covering the location in which the arbitrators are sitting and not, if the two locations are different, in the district court covering the location to which the parties were summoned." *See Matter of Arb. between Tang Energy Grp., Ltd. v. Catic U.S.A.*, No. 3:15-mc-80209-LB, 2015 WL 4692459, at *2 (N.D. Cal. Aug. 6, 2015); *All. Healthcare Servs., Inc.*, 804 F. Supp. 2d at 811–12.

Third, the Court is not persuaded by Campaign's arguments that an arbitration panel can sit in more than one location, and that the arbitration panel moved the situs of the arbitration to this district for the purposes of compelling testimony and documents from Tarone and Quayle. *See* Dkt. Nos. 22, at 4; 37, at 1–2. For support, Campaign has cited to Arbitration Association ("AAA") Rule R-12, Fixing of Locale, which provides:

> When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement . . . The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

Romeo Decl. Ex. 15, at 17–18; Dkt. No. 22, at 4–5. Campaign argues that AAA Rule R-12 and the Employment Agreement are not in conflict and asserts that "the AAA Rules, incorporated into

7

the arbitration agreement, specifically contemplate scenarios where the arbitration agreement also specifies a location where the arbitrators sit but, despite that, grant the arbitrators the right to choose where they sit." Dkt. No. 22, at 5. According to Campaign, "essentially, the arbitration agreement provides that the arbitrators sit in Delaware except as decided otherwise by the arbitrators" – and the arbitrators have decided to sit in New York, New York "for purposes of the instant subpoenas." *Id.* at 5, 6; *see* Dkt. No. 37, at 3.

But the cited rule only authorizes the arbitrators to alter the location agreed upon in the Employment Agreement if the parties consent! And while the arbitration panel can decide to conduct a "special hearing" in another location, Campaign is not asking for the arbitration panel to conduct a hearing in some location other than Delaware. It is asking a federal district court in New York to enforce a subpoena issued by an arbitral panel sitting in Delaware. Federal district courts have to play by the rules set by Congress. Congress provided that the only federal court that could enforce an arbitral subpoena is the one located at the situs of the arbitration. Campaign has not introduced any evidence to suggest that Respondents have agreed to change the situs of the arbitration, and the AAA Rules do not allow the arbitration panel to change the situs of the arbitration in the absence of such consent. They allow the arbitration panel to conduct a hearing in a location other than Delaware, but that does not conflict with Section 7's mandate that only a Delaware court (a court, not an arbitrator) can enforce a subpoena issued by arbitrators who are sitting in Delaware. I am constrained to note that when they issued the subpoenas the arbitrators were not sitting anywhere else.

Campaign's efforts to distinguish this case from *Depuy*, 2022 WL 79812, at *4 are unconvincing. In *Depuy*, a district court in Ohio concluded that it was not the proper venue in which petitioner could seek enforcement of a subpoena issued by an arbitrator "sitting" in Indiana.

2022 WL 79812, at *3. Campaign insists that *Depuy* failed to analyze that *WNIC* "actually rested on where the arbitrators 'are' sitting 'for purposes of the subpoenas,' not where the arbitrators are to otherwise hold the ultimate hearing on the merits;" it also argues that *Depuy* did not analyze the parties' arbitration agreement's terms or consider the AAA Rules, which the parties have selected to govern their dispute resolution process. Dkt. No. 22, at 7.

But Campaign just goes around in circles. The arbitration panel's authority under AAA Rule R-12 "to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process," Romeo Decl. Ex. 15, at 17–18, does not alter the fact that the seat of the arbitration is in Delaware, or that the statute we are interpreting – Section 7 of the FAA – specifically provides that the only court that can enforce an arbitral subpoena is the federal court sitting at the seat of the arbitration. *See Day*, 2021 WL 4069753, at *2. According to the Restatement (Third) of the U.S. Law of International Commercial and Investor-State Arbitration, the seat of an arbitration "is the legal or juridical home of the arbitration." Restatement (Third) U.S. Law of Int'l Comm. Arb. § 1.3 cmt. a (Am. L. Inst. 2019); *see Day*, 2021 WL 4069753, at *2; *GBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2nd Cir. 2017); *see also* Gary B. Born, International Commercial Arbitration 1574 & 1576 (2d ed. 2014); Julian D.M. Lew et al., Comparative International Commercial Arbitration 172 (2003). Campaign relies entirely on the fact that the arbitrators can choose to hold hearings anywhere they like, but the seat of the arbitration is "not necessarily the place where the arbitration hearings take place." Restatement (Third) U.S. Law of Int'l Comm. Arb. § 1.3 cmt. a (Am. L. Inst. 2019); *see Day*, 2021 WL 4069753, at *2. There are arguments to the contrary – see, for example, George A. Bermann et al., A Model Federal Arbitration Summons to Testify and Present Documentary Evidence at an Arbitration Hearing, 26 Am. Rev.

9

Int'l Arb. 157, 168–70 & n.19 (2015) – but while those arguments should perhaps be adopted (especially in light of the fact that nationwide service of process has been authorized), I am not persuaded that Congress has already done so.

Here, despite Campaign's assertion that "the applicable arbitration agreement enables the arbitrators to choose the situs of the arbitration," Dkt. No. 37, at 3, the language in the Employment Agreement indicates otherwise: "[t]his Agreement *shall be* governed by the laws of the State of Delaware" and "[a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, *shall be* settled by binding arbitration *in the State of Delaware* in accordance with the rules of the American Arbitration Association then in effect. . . ." Romeo Decl. Ex. 1, at 6–7 (emphasis added). Even with the incorporation of the AAA Rules into the Employment Agreement, it cannot be said that the "seat" of the *arbitration* – as opposed to the seat of some special hearing – can be altered by the arbitrators without the consent of all parties, which consent has never been given.

Campaign has directed this Court's attention to the district court's decision in *Washington National Insurance Co. v. OBEX Group*, No. 18 cv 9693, 2019 WL 266681 (S.D.N.Y. Jan. 18, 2019), where my esteemed colleague Judge Briccetti explained:

> Nothing in Section 7 requires an arbitration panel to sit in only one location. Indeed, such a holding would greatly circumscribe an arbitration panel's ability to decide a case, potentially discourage litigants from arbitrating disputes involving nonparty witnesses in multiple locations, and thus contradict "the strong federal policy in favor of arbitration."

*Id.* at *5 (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)); Dkt. No. 37, at 2; *see Symetra Life Ins. Co. v. Admin. Sys.'s Rsch. Corp. Int'l*, No. 21-2742, 2022 WL 16730542, at *4 (6th Cir. Nov. 7, 2022). Campaign contends that "[i]f Congress had intended to

10

fix where the arbitrators sit to one location, then Congress would have specified the arbitrators are to determine a single place where they sit." Dkt. No. 22, at 7.

Ordinarily I find myself in agreement with Judge Briccetti – but not in this instance. I conclude, as did the court in *Rembrandt*, 2011 WL 13319343, at *3, that "the structure of the statute indicates that there is but one place where the arbitrators, or a majority of them, are sitting." *See Day*, 2021 WL 4069753, at *2. There is no indication that "are sitting" "is a flexible term meaning wherever the arbitrators or a majority of them happen to be at the time of a hearing."[2] *Rembrandt*, 2011 WL 13319343, at *3. In order to convey the meaning that the district could be multiple districts where the arbitrators choose to have a particular hearing at the time, would require additional words that are not present in the statute." *Rembrandt*, 2011 WL 13319343, at *3. And "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA," *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003), "'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)) (emphasis added). Tarone and Quayle are not parties to the Employment Agreement, and "the parties should not be permitted to stretch the law beyond the text of Section 7 and Rule 45 to inconvenience witnesses." *Dynegy*, 451 F3d at 96.

Finally, Campaign implies that *Alliance Healthcare Services*, 804 F.Supp.2d at 811–14, is inapposite because the decision "contains no conclusions regarding where arbitrators sit, but rather that the court not enforce a subpoena due to the geographical limitations imposed by Rule

---

[2]  The parties have not indicated that any hearing has as of yet been held in New York, nor offered any evidence that the arbitrators were sitting in New York when they issued the subpoenas – not that it would matter, since by the Employment Agreement, the seat of the arbitration is Delaware. *See supra* pp. 5, 10.

11

45." Dkt. No. 22, at 8. I am deciding this case on the basis of the statutory language, so it really is not necessary to engage in endless discussion of various cases. However, I find the *Alliance Healthcare Services* court's discussion of the interplay between Rule 45 and Section persuasive. 804 F.Supp.2d at 811–14. While under other circumstances, Rule 45 would permit this Court to issue a subpoena commanding the non-parties to attend a hearing in New York, Section 7's provision that "only a court in the district where the arbitration is being conducted to enforce an arbitration subpoena" precludes me from doing so. *Id.* at 813. Though Rule 45 and Section 7 "no doubt create[] an enforcement gap," "it is up to Congress, not a court, to fill such gaps." *Id.* And as in *Dynegy*, I see "no reason to come up with an alternate method to close a gap that may reflect an intentional choice on the part of Congress, which could well have desired to limit the issuance and enforcement of arbitration subpoenas in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law." 451 F.3d at 96.

In sum, as the seat of the arbitration is Delaware, not in New York – because Delaware is where the arbitration is being administered, *Depuy*, 2022 WL 79812, at *3 – Delaware and only Delaware is where the parties can obtain enforcement of these particular subpoenas. I happen to consider that an unfortunate result and I am undoubtedly not the first judge to urge Congress to close this ridiculous loophole. But until Congress does, I am bound by the language of the statute. I cannot enter an order enforcing this subpoena.

## CONCLUSION

For the reasons discussed above, the Court denies Petitioner's Motion to Compel compliance with the subpoenas. That decision automatically results in the dismissal of the

underlying petition to compel and renders Respondents' motions redundant – for which reason they are dismissed as well.

Respondents have made a perfunctory and wholly unsupported request for attorneys' fees. As there is no provision for such an award, it is denied – we are a "user pays" jurisdiction, not a "loser pays" jurisdiction. Moreover, if Respondents had cited to any authority allowing this court in its discretion to award them attorneys' fees, I would in an exercise of my discretion decline to do so, if only because of the behavior described in the footnote on the first page of this decision.

The Clerk of the Court is directed to close these motions at Docket Numbers 13, 15, and 38. This is a written decision.

Dated: June 24, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL